IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| | * | |
| L.J., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-20-2433 |
| | * | |
| BALTIMORE CURRICULUM PROJECT, | * | |
| *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff L.J.[1] ("Plaintiff"), as Mother and Next Friend of T.G., a Minor, filed a Complaint against Defendants Baltimore Curriculum Project, Inc. d/b/a City Springs Elementary School ("BCP"); Baltimore City Board of Schools Commissioners ("BCBSC"); Laura Doherty, Individually and in her Official Capacity as Chief Executive Officer of BCP; Rhonda Richetta, Individually and in her Official Capacity as Principal of City Springs Elementary School; and Timothy Randall Korr.  ECF 8.  BCBSC and Richetta (the "BSBSC Defendants") moved to dismiss together, as did Korr, separately.[2]  ECF 16, ECF 18-1.  Plaintiff opposed both motions.

---

[1] Plaintiff filed suit using her initials, L.J.  While it is undoubtedly appropriate to allow her minor son to proceed anonymously per Fed. R. Civ. P. 5.2(a)(3), it is not clear what justification she has for proceeding anonymously herself.  With the stated exception of cases involving minors, "[e]very action shall be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17.  While the Fourth Circuit has recognized exceptions to this rule in "exceptional circumstances," proceeding by pseudonym is a "rare dispensation."  *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014).  This does not appear to be a case warranting such treatment, particularly since there has been extensive news coverage of the incident underlying her Complaint, much of which identifies Plaintiff by name.  As such, the Court will order Plaintiff to show cause as to why she should be permitted to proceed anonymously in light of the Federal Rules of Civil Procedure and Fourth Circuit case law suggesting that such an approach is generally disfavored.

[2] BCP and Doherty have answered, ECF 17, and all claims against those Defendants will proceed to discovery.

ECF 2, ECF 25.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, both BCBSC's and Korr's motions to dismiss will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

These facts are derived from Plaintiff's Complaint and are taken as true for purposes of adjudicating the motions to dismiss.  During the 2016-2017 school year, T.G. was a seven-year-old first grader at City Springs Elementary School.  ECF 8 ¶ 9.  T.G. suffers from various disabilities such as Intellectual Disability, Attention Deficit Hyperactivity Disorder, and anger issues.  *Id.*  On November 28, 2016, Korr was summoned to T.G.'s classroom because T.G. was misbehaving.  *Id.* ¶ 31.  Korr began walking T.G. to the principal's office.  *Id.*  Korr then grabbed T.G. and slung him over his shoulder.  *Id.*  T.G. resisted briefly before submitting.  *Id.* ¶ 32.

With T.G. on his shoulder, Korr continued walking and descended to the first-floor stairwell.  *Id.* ¶ 35.  At that point, Korr smashed T.G.'s face into the wall.  *Id.*  T.G. went limp and unresponsive.  *Id.* ¶ 42.  This incident was observed by three different school officials.  Two of those individuals saw Korr carry T.G. on his shoulder and did not intervene.  *Id.* ¶ 31, 34.  Another saw Korr smash T.G.'s face into the wall or, at a minimum, was present for the aftermath.  *Id.* ¶ 37-39.  This man also failed to render aid to the injured T.G.  *Id.*

The police were called to the school to investigate, at which point Richetta had already viewed a recording of the incident via the school's CCTV system.  *Id.* ¶ 51.  Richetta then showed the video to an officer on the scene and told the officer that Korr fell down the steps or lost his footing and that T.G. threw himself into the wall.  *Id.* ¶ 51, Fig. 4.  Johns Hopkins Hospital was ultimately advised that T.G. had a gun at the time of the incident.  *Id.* ¶¶ 46, 143.

Following the incident, Korr was charged with Second Degree Child Abuse.  A number of individuals at City Springs Elementary supported Korr throughout the trial, filling the courtroom

during Korr's sentencing wearing shirts in his support and publishing an anonymous document indicating how school officials were devastated by Korr's absence. *Id.* ¶ 55, 115.

## II.   LEGAL STANDARDS

Defendants' motions to dismiss allege that Plaintiff has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 17, 18.  A defendant is permitted to test the legal sufficiency of a complaint by way of a 12(b)(6) motion.  *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  Such a motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

3

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015).  However, a court is not required to accept legal conclusions drawn from the facts.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.   ANALYSIS

### A.  Immunity and Respondeat Superior

Before delving into the substance of the various claims, the Court must first address the several immunity arguments put forth by the BSBSC Defendants at various points in their Motion.

First, they allege that BCBSC, as an arm of the state, enjoys immunity against state constitutional torts alleged by Plaintiff and against vicarious liability for torts committed by Korr and Richetta. See ECF 18-1 at 18 (citing *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282 (2001)).[3] Plaintiff, on the other hand, attempts to distinguish *Cherkes* by arguing that BCBSC is a local government entity, not a state entity, and therefore is liable for civil damages resulting from State constitutional violations.  ECF 25 at 15-16 (citing *Prince George's County v. Longtin*, 19 A.3d 859, 885 (2011)).  Despite Plaintiff's contention, "it is well established that the relationship between local boards of education and the State of Maryland is sufficiently close to make the boards an arm of the state." *Downing v. Baltimore City Bd. of Sch. Comm'rs*, No. CIV.A. RDB-12-1047, 2012 WL 6615017, at *4 (D. Md. Dec. 18, 2012) (compiling cases).  To that end, BCBSC "is undoubtedly a state agency because it bears all of the key indicia—state law creates and controls the Board, it serves a state purpose, and the Mayor and Governor appoint the Board members from a list of individuals submitted by the State Board of Education."  *Id.*; *see also Baltimore City Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 194 Md. App. 400, 411 (2010) (referring to BCBSC as a "state agency").

As a state agency, BCBSC is immune from state constitutional tort claims under *Cherkes*. 780 A.2d at 428-429 (explaining that common law sovereign immunity for state agencies is total and covers both common law and constitutional torts).  Nothing in *Longtin* suggests otherwise. *Rosa v. Bd. of Educ. of Charles County, Md.*, 2012 WL 3715331 at 10 (D. Md. Aug. 27, 2012) ("The *Longtin* court neither stated nor intimated that plaintiffs could institute pattern or practice

---

[3] BCBSC and Richetta also make the related assertion throughout their Motion that they are entitled to Eleventh Amendment immunity as an arm of the state, such that any § 1983 claims made by Plaintiff must be dismissed.  Plaintiff does not make any § 1983 claims against BCBSC or Richetta, however, so these arguments are inapposite.

claims against state government agencies . . . [and it is] exceedingly unlikely that the Court of Appeals of Maryland would have ushered in such a radical change in legal landscape *sub silentio*.").   Therefore, to the extent that Plaintiff seeks to hold BCBSC liable for state constitutional torts or common law torts, Defendants' motion to dismiss will be granted on common law sovereign immunity grounds.

Next, Defendants assert that Richetta individually is entitled to qualified immunity for any constitutional violations alleged arising out of the statements she made to police during their investigation, because she was a public official performing a discretionary function.  ECF 18-1 at 6-9.  Defendants' brief does not specify the claims they allege to be affected by such immunity. The portions of the Complaint against Richetta individually do not allege constitutional violations but rather two types of civil conspiracy, defamation, and intentional infliction of emotional distress.   Each of these claims against Richetta is a state law claim, rendering Defendants' invocation of § 1983 case law on qualified immunity unavailing.  Instead, Maryland's common law qualified immunity applies.  "[T]he Maryland common law qualified immunity enjoyed by public officials in the performance of discretionary acts is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Smith v. Danielczyk*, 400 Md. 98, 129 (2007) (internal citations omitted).  It does not apply to the sort intentional conduct Richetta is alleged to have carried out, *id.*, nor does the statutory immunity for school board employees embodied in MD. CODE ANN., CTS. & JUD. PROC. § 5-518(e).  *See also Neal v. Baltimore City Bd. of Sch. Commissioners*, 467 Md. 399, 406 (2020) ("[A] board employee, acting within the scope of her employment, is shielded from personal liability if she was not acting with malice or gross negligence. . . .").

6

The same result is true of Defendants' apparent attempt to invoke public official immunity. Once again, Defendants' brief is unclear as to the specific claims for which they wish to invoke public official immunity, leaving it up to Plaintiff and the Court to decipher their argument. Maryland does not recognize public official immunity as a defense to intentional torts alleged against individual officials.  *See Ashton v. Brown*, 339 Md. 70, 117 (Md. 1992) (stating that "[p]ublic official immunity is not a defense to these intentional torts," including assault, battery, false imprisonment, and intentional infliction of emotional distress).  Likewise, public official immunity does not protect state officials from state constitutional torts.  *See Ritchie v. Donnelly*, 324 Md. 344, 370 (1991) ("[A] public official who violates the plaintiff's right under the Maryland Constitution is personally liable for compensatory damages.").  Because the claims asserted against Richetta lie outside the purview of public official immunity, the BCBSC Defendants' attempt to invoke such immunity fails.

### B.  Count I – Unlawful Seizure & Excessive Force

Plaintiff's first claim is against Defendant Korr individually, alleging that he violated 42 U.S.C. § 1983 and the Maryland constitution when he allegedly seized T.G., threw T.G. over his shoulder, and slammed T.G. against a wall.  ECF 8 ¶¶ 75-85.  In response, Korr contends that minors have limited liberties as to their physical freedom and are, by law, regularly subject to the control of school administrators like Korr.  ECF 16 at 3.  According to Korr, this reduced liberty for minors, combined with public schools' "custodial and tutelary" powers over their students, allows school administrators to seize students like T.G. for disciplinary and safety reasons.  *Id.* Importantly, however, the seizure power that Korr cites is not unconstrained.  Seizures of students must "reasonably related in scope to the circumstances which justified [it] in the first place." *Wofford v. Evans*, 390 F.3d 318 (4th Cir. 2004) (discussing seizure of students in the context of

Fourth Amendment claims).  Here, Plaintiff alleges that, in response to a request to escort T.G. to the principal's office due to T.G.'s behavioral difficulties, Korr "picked T.G. up and slung him over his shoulder like a sack of potatoes," before "grab[bing] T.G. with both hands from his shoulder . . . and then smash[ing] T.G.'s face into the wall."  ECF 8 ¶¶ 31, 35.  At this early stage of the proceedings and drawing all factual inferences in Plaintiff's favor, such factual allegations plausibly suggest that Korr's seizure of T.G. exceeded its reasonable scope, given the lack of apparent justification for Korr's alleged brutal handling of T.G.[4]

### C.  Count II – Conspiracy to Commit Deprivation of Civil Rights

Count II of the Complaint alleges that Richetta conspired with Korr to deprive T.G. of his civil rights under the Maryland constitution by attempting to influence the police to abandon their criminal investigation into Korr through their misleading statements about the incident and the video recording.  ECF 8 ¶¶ 86-93.  Richetta moves to dismiss on the grounds that Plaintiff failed to sufficiently allege an "agreement or understanding to accomplish an unlawful act" between Korr and herself.  ECF 18-1 at 9-10.  While it is true that there are no factual allegations in the Complaint asserting that Richetta and Korr ever discussed the incident or agreed to plan a coverup, Maryland law requires only an "understanding" between two or more people in order to allege a civil conspiracy.  *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 385 Md. 1 (2005)).

---

[4] Korr argues that he had been told that T.G. claimed to have a gun and that a toy gun was later found in his possession, suggesting that his rough handling of T.G. was justified.  ECF 16 at 4. While the Complaint notes that Johns Hopkins was notified of the presence of a gun in T.G.'s possession and suggests that this was a manufactured threat to justify Korr's actions post-incident, it does not include any factual allegations regarding the actual existence of a gun.  Therefore, such allegations are not appropriate for consideration at the motion to dismiss phase.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Korr may, of course, continue to argue the reasonableness of his conduct as the case proceeds.

Plaintiff provided sufficient factual allegations regarding Richetta's conduct to plausibly allege an understanding with Korr to cover up his allegedly tortious handling of T.G., including Richetta's claiming "that Korr had lost his footing," "that T.G. 'hit himself' on the wall," and "that T.G. had brought a gun to school and was brandishing the gun." ECF 8 ¶ 46. These alleged facts align with the allegations regarding Korr's "[false] claim that T.G. was in possession of a gun," *id.* ¶ 49, and his contemplation of "various false statements that he would tell other school staff in an effort to conceal his odious conduct," *Id.* ¶ 42. While additional facts would no doubt be required to *prove* understanding sufficient to constitute a conspiracy between Richetta and Korr, the Court must draw all factual inferences in Plaintiff's favor at this early stage of the litigation. As such, the Court concludes that Korr and Richetta's alleged parallel false statements support a plausible claim of a civil conspiracy to cover up Korr's conduct.

### D. Count III – Eighth Amendment Violation

In Count III, Plaintiff alleges that Korr violated T.G.'s Eighth Amendment protection against "cruel and unusual punishment." ECF 8 ¶¶ 94-102. The Supreme Court has unequivocally held that the Eighth Amendment does not apply to school students. *Ingraham v. Wright*, 430 U.S. 651, 651 (1977). Plaintiff urges the Court to depart from *Ingraham* based on a variety of policy arguments, ECF 8 ¶ 98, but provides no legal justification for doing so. This Court is not empowered to disregard such clearly established Supreme Court precedent merely because Plaintiff thinks it would be a good idea to do so. Count III will therefore be dismissed for failing to state a claim, because the Eighth Amendment does not apply to the treatment of schoolchildren.

### E. Count IV – Failure to Train

Count IV alleges that Defendants BCP and BCBSC violated the Maryland Declaration of Rights via its alleged policy or practice of failing to adequately train and supervise its employees

in relation to their contact with students.  ECF 8 ¶¶ 103-110.  As noted above in Section III(A), BCBSC is a state agency and as such has common law sovereign immunity against state constitutional tort claims.  *Cherkes*, 780 A.2d at 424.  Count IV is therefore dismissed as to BCBSC.

### F.  Count V – Custom of Unconstitutional Conduct

In Count V, Plaintiff alleges that BCP and BCBSC permitted a custom of unconstitutional conduct to exist at City Springs Elementary School in violation of the Maryland Declaration of Rights.  While the Complaint does not identify what, precisely, the unconstitutional custom in question is alleged to be, the factual allegations suggest that it is a custom allowing the seizure and physical abuse of children in the name of discipline and school safety.  ECF 8 ¶¶ 111-117.  Once again, BCBSC is shielded from liability as a matter of law because it is a state agency and enjoys common law sovereign immunity against state constitutional tort claims.  *Cherkes*, 780 A.2d at 424.  Count V will be dismissed as to BCBSC.

### G.  Count VI – State-Created Danger

Count VI alleges that BCP and BCBSC violated their special duty to assure T.G.'s safety and well-being, a duty allegedly arising out of Korr's seizure of T.G. implicating the so-called "state-created danger" doctrine.  ECF 8 ¶¶ 118-23.  The state-created danger doctrine imposes liability on the state for harm caused by private actors in situations where 1) the private conduct would have violated a constitutional right had it been carried out by the state *and* 2) the state increased the risk of harm to its citizens through its own affirmative acts.  *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-01 (1989).  Put differently, a state entity can be held liable under this theory, even though the harm was inflicted by a private party, if the state's actions or policies played a part in the creation of the danger or otherwise made the

victim more vulnerable to it.  While this doctrine is well-established in the context of federal constitutional claims, Plaintiff here alleges only state-created danger in the context of violations of the Maryland Declaration of Rights.  ECF 25 at 21.

Maryland "has not adopted [the state-created danger doctrine] as a basis upon which to recover for violations of Maryland's Constitution." *McNack v. State*, 398 Md. 378, 392-93 (2007). What is more, the *McNack* court specifically noted that the state-created danger theory "has only been discussed in the context of claims brought under 42 U.S.C. § 1983" for alleged violations of rights protected by federal law, and read *DeShaney* to indicate that "it is up to the state legislatures and courts to establish the parameters for liability, if any, of each states' governmental actors with respect to civil remedies for alleged violations of an individual's state constitutional rights." *Id.* at 393.  Thus, while *McNack* did not foreclose future adoption of the state-created danger theory as a basis for recovery under the Maryland Constitution, it also expressly stated that 1) the theory has not yet been adopted and 2) if it is to be adopted, it would be done so by the state legislatures and courts.  Against this backdrop, this Court concludes that Plaintiff has failed to state a claim as to the state-created danger theory, since the *McNack* court explicitly held that such a theory has not yet been adopted by the Maryland courts or legislature.  Count VI will therefore be dismissed.

### H.  Count IX – False Imprisonment

Count IX of the Complaint is a state law tort claim alleging that Korr falsely imprisoned T.G.[5]  ECF 8 ¶¶ 132-34.  Korr moves to dismiss, arguing that school administrators are authorized to detain students for disciplinary action for up to two hours, and that his detaining of T.G. was both temporally brief and otherwise appropriate for the behavioral difficulties T.G. was exhibiting. ECF 16 at 7-9.  Under Maryland law, the elements for false imprisonment are "a deprivation of

---

[5] Korr did not move to dismiss Counts VII or VIII.

the liberty of another without his consent and without legal justification." *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731, 738 (Md. 1970).

Plaintiff has plausibly alleged that Korr lacked legal justification for his handling of T.G. While Korr focuses his arguments on the duration of T.G.'s detention, the thrust of Plaintiff's claim is not that the seizure was too long or that school administrators do not have the authority to seize students without consent for disciplinary reasons generally, but rather that this seizure—and in particular the manner it was carried out—lacked legal justification. Specifically, the Complaint alleges that the tortious imprisonment involved Korr "pick[ing] T.G. up and [slinging] him over his shoulder like a sack of potatoes," and then "grab[bing] T.G. with both hands from his shoulder . . . and then smash[ing] T.G.'s face into the wall." ECF 8 ¶¶ 31, 35. While the Complaint does note that T.G. was experiencing "behavioral difficulties" and that he initially resisted Korr after being thrown over his shoulder, *id.* ¶¶ 10, 31-32, such facts cannot conclusively support a finding that Korr's seizure of T.G. was justified as a matter of law, particularly at this early stage of the litigation in which all factual inferences—regarding the extent of T.G.'s behavioral issues and the severity of Korr's handling of T.G. in response—must be resolved in Plaintiff's favor.

## I.  Count X – Defamation

Count X alleges that Korr, Richetta, BCP, and BCBSC defamed Plaintiff via statements Korr and Richetta made during the police investigation surrounding the incident with T.G. ECF ¶¶ 135-149. Plaintiffs must establish four elements in a prima facie case of defamation: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007) *aff'd*, 450 Md. 468 (2016) (citing *Smith*

*v. Danielczyk*, 400 Md. 98 (2007)).  BCBSC and Richetta[6] contend that the "plain and natural meaning" of Richetta's statements was not defamatory, that she did not make the statements to the public, and that her alleged statements are not her own words but rather those of the police officer authoring the police report containing them.  ECF 18-1 at 23-24.  Additionally, Defendants assert that Plaintiff has not established that she (via T.G.) suffered any actual damages.  *Id.*

Each of these arguments is unsuited for resolution at the motion to dismiss phase of this litigation.  The Complaint plausibly alleges several specific, false statements made by Richetta. Any contention about whether Richetta's statements were genuinely false, whether she knew or recklessly disregarded their falsity, or whether she in fact said those false statements to the police officer authoring the report, are points of factual dispute better addressed as the litigation proceeds. Additionally, Maryland law does not require a false statement to be made to the public, but rather only "to a third person," *Offen*, 402 Md. at 198, which Plaintiff clearly alleges given that Richetta is alleged to have made the false statements to a police officer.  Lastly, regarding Defendants' assertion that Plaintiff has not plausibly alleged injury resulting from the defamation, Plaintiff is seeking presumed damages, ECF 8 ¶ 149.  In Maryland, presumed damages may be awarded in private defamation cases where the plaintiff satisfies the "constitutional malice" standard, which requires evidence of defendant's "knowledge of falsity or reckless disregard for truth."  *Seley-Radtke v. Hosmane*, 450 Md. 468, 503 (2016).  Here, Plaintiff has plausibly alleged that Richetta knew her statements about T.G.'s injury were false, because she viewed the video before making them.  Thus, Plaintiff has sufficiently and plausibly plead a defamation claim.

Additionally, while BCBSC is generally entitled to sovereign immunity as outlined in Section III(A), it has waived such immunity with regard alleged tortious acts of employees like

---

[6] Korr, in his separate motion to dismiss, does not expressly contest the defamation claim.

Richetta.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-518; *see also Neal*, 467 Md. at 422 ("[W]hen a board employee acts within the scope of employment and with malice or gross negligence, the employee does not have immunity and the employee (as well as the board) remains liable [under § 5-518].").  Thus, Count X may additionally proceed against BCBSC.

### J.  Count XI – Civil Conspiracy

Count XI is nearly identical in scope to the Count II claim for Conspiracy to Commit Deprivation of Civil Rights covered in Section III(B) of this opinion—the only difference being that the conspiracy at issue in Count XI pertains to violations of Maryland common law rather than its Declaration of Rights.  Defendants' arguments in favor of dismissing Count XI mirror their arguments to dismiss Count II and fail for the same reasons.  Drawing all factual inferences in Plaintiff's favor, the Court concludes that the parallel false statements Korr and Richetta are alleged to have made support a plausible claim of a civil conspiracy to cover up Korr's conduct.

### K.  Count XII – Vicarious Liability for Maryland State Law Claims Against Korr

Count XII alleges that BCP and BCBSC should be held vicariously liable for the common law tort claims alleged against Korr in Count VII (Negligence), VIII (Battery), and IX (False Imprisonment).  As noted above in Section III(A), BCBSC is a state agency and holds common law state sovereign immunity from all tort claims, including those seeking to attach liability to the agency under a theory of respondeat superior.  *See Cherkes*, 140 Md. App. at 303-306.  While BCBSC has waived sovereign immunity to torts alleged against its employees, board members, and volunteers pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 5-518, Korr does not fit any of those categories since he worked for BCP, not BCBSC.[7]  Plaintiff points out that BCP runs City

---

[7] Plaintiff cites to *Ford v. Baltimore City Sheriff's Office*, 814 A.2d 127, 133-34 (Md. App. 2002), as evidence that the state has waived sovereign immunity.  ECF 25 at 15.  However, *Ford* involved

Springs Elementary under BCBSC's supervision, pursuant to Maryland statute.  ECF 25 at 14

(citing MD. EDUC. § 9-102(11)).  She suggests that this statutory link between BCP and BCBSC

makes Korr a state actor who functionally wielded authority that BCBSC delegated to BCP and,

by proxy, him.  *Id.*  Even if one were to accept Plaintiff's line of reasoning, waivers of sovereign

immunity are strictly construed in favor of the sovereign.  *Bd. of Educ. of Baltimore Cty. v.

Zimmer-Rubert*, 409 Md. 200, 212 (2009).  As such, this Court cannot read § 5-518 to broadly

waive immunity for tort claims against individuals like Korr who are not actual BCBSC

employees, board members, or volunteers and instead operate, at best, in a gray area of delegated

BCBSC authority.  Count XII will therefore be dismissed as to BCBSC.

### L.  Count XIII – Intentional Infliction of Emotional Distress

Count XIII alleges that Richetta intentionally inflicted emotional distress upon T.G. by

lying to the police in order to interfere with the criminal investigation into Korr and the school.  In

order to plausibly allege intentional infliction of emotional distress ("IIED"), the alleged conduct

must "be intentional or reckless; the conduct must be extreme and outrageous; there must be causal

connection between the wrongful conduct and the emotional distress; and the emotional distress

must be severe."  *Lee v. Pfeifer*, 916 F. Supp. 501, 506 (D. Md. 1996) (quoting *Harris v. Jones*,

281 Md. 560 (Md. 1977)).  In addition, "[t]o be actionable, the conduct alleged must be 'so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* at 507.

_____

the Maryland Tort Claims Act ("MTCA"), whose general waiver provision is not implicated here
because BCBSC is subject to the separate, specific waiver provision found in MD. CODE ANN.,
CTS. & JUD. PROC. § 5–518 covering the same ground.  *See Proctor v. Washington Metro. Area
Transit Auth.*, 412 Md. 691, 712 (2010) ("[T]he Legislature intended that the MTCA serve as a
'gap-filler' to waive [sovereign immunity] in tort when no other statute expressly waived the
agency's immunity.  If such a statute is in place . . . the MTCA shall not affect the existing
waiver.").

"The Maryland Court of Appeals has emphasized that 'the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Id.* at 507.

Relying on the above language cabining the scope of IIED claims, Defendants argue that the Complaint fails to allege any specific emotional distress arising out of Richetta's statements. ECF 18-1 at 26-27.  These concerns are meritorious.  Count XIII makes only conclusory mention of emotional distress, alleging that "[T.G.] has and will continue to suffer extreme emotional distress" and referencing "severe, painful and permanent injuries to mind and body" that caused him to seek medical care.  ECF 8 ¶¶ 167-68.  Such broad and unspecific reference to distress—to say nothing of the fact that the Complaint fails to specify which injuries were caused by Richetta's statements as opposed to Korr's physical handling of T.G.—is precisely the sort of "[t]hreadbare recital[] of the elements of a cause of action" that falls short of the notice pleading standard.  *Iqbal*, 556 U.S. at 678.  This is particularly true given the emphatically narrow scope of IIED articulated by Maryland courts.  Thus, Count XIII will be dismissed without prejudice.

### M. Count XIV – Section 504 Disability Discrimination

Count XIV, the Complaint's final claim, alleges that BCP and BCBSC discriminated against T.G., an individual with a disability, in violation of Section 504 of the Rehabilitation Act of 1973.  Specifically, Plaintiff alleges the violation occurred when a BCP teacher asked Korr to escort T.G. from the classroom due to manifestations of T.G.'s disability, leading to Korr's alleged attacking T.G. due to his poor behavior resulting from his disability and concluding with Richetta's cover-up of the allegedly discriminatory attack.  ECF 8 ¶¶ 169-176.  BCBSC moves to dismiss based on Plaintiff's alleged failure to exhaust administrative remedies as required by 20 U.S.C. § 1415(l).  ECF 18-1 at 27-29.  "§ 1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education," *Fry v. Napoleon Community Schools*, 137

S.Ct. 743, 754 (2017), and Plaintiff responds that Count XIV does not pertain to denial of a "free appropriate public education" ("FAPE") but rather pertains to disability-based discrimination, ECF 25 at 23-24.

This Court concludes that Count XIV is ultimately a claim for disability-based discrimination as opposed to a denial of a FAPE, and thus there was no administrative exhaustion requirement. *Fry* provides clear guidance to this end, suggesting that a claim sounds in something other FAPE if 1) plaintiff could have brought the same claim if the alleged conduct occurred at some public facility other than a school and 2) plaintiff could have pressed the same claim if T.G. were an adult as opposed to a schoolchild. 137 S.Ct at 756. Both elements of the *Fry* analysis are satisfied here. Plaintiff's claim could have been brought if Korr's alleged manhandling due to Plaintiff's behavioral difficulties had occurred somewhere other than a school, as it could have been brought if Korr had manhandled an adult instead of a child. Nothing in Count XIV necessarily implicates Plaintiff's access to education specifically. Thus, there is no administrative exhaustion requirement, per *Fry*.

## IV.   CONCLUSION

For the reasons set forth above, Korr's Motion to Dismiss, ECF 16, will be GRANTED as to Count III and DENIED as to the remaining Counts. The BCBSC Defendants' Motion to Dismiss, ECF 18-1, will be GRANTED as to Counts IV, V, VI, XII, and XIII and DENIED as to the remaining Counts. The dismissed claims are dismissed without prejudice. A separate implementing Order follows.

Dated:  January 20, 2021                                    _____/s/_____
                                                             Stephanie A. Gallagher
                                                             United States District Judge